UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MICHAEL SALAS**,   Case No. 1:11 CV 1511

    Plaintiff,   Judge James S. Gwin

  v.   REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.   Magistrate Judge James R. Knepp, II

## INTRODUCTION

Plaintiff Michael Salas appeals the administrative denial of Supplemental Security Income (SSI) under 42 U.S.C. § 1383(c). The district court has jurisdiction over this case under 42 U.S.C. § 1383(c)(3). This case was referred to the undersigned for the filing of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated July 22, 2011). For the reasons given below, the Court recommends the Commissioner's denial of benefits be affirmed.

## BACKGROUND

The unique posture of this case, along with the arguments presented, makes Plaintiff's medical history immaterial on appeal. Because Plaintiff disputes only the ALJ's determination at step five – specifically, his handling of the vocational expert's testimony – Plaintiff has waived all arguments about the rest of the ALJ's decision, including Plaintiff's residual functional capacity (RFC). *See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Thus, the Court need not discuss the medical history that caused Plaintiff to allege disability.

Plaintiff filed an application for SSI on December 12, 2002, initially alleging a disability onset date of September 1, 1995, though later amending his onset date to the date of his application. (Tr. 98–100, 157, 641). Plaintiff's application was denied initially (Tr. 80–83) and upon reconsideration (Tr. 85–87). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). Plaintiff appeared with counsel at a hearing before the ALJ on October 27, 2005 (Tr. 43–65), after which the ALJ issued an unfavorable decision (Tr. 19–33, 659–673).

Plaintiff sought review of the ALJ's denial (Tr. 13–18, 702–706), but the Appeals Council denied review after incorporating some new evidence into the record (Tr. 9–12, 707–709). Thereafter, Plaintiff filed suit in this Court challenging the ALJ's decision. Following the adoption of a Report and Recommendation by the Magistrate Judge, the Court remanded the case to the Commissioner for "new findings with respect to the number of jobs available to someone with [Plaintiff's] limitations and a determination whether the number of jobs identified constitutes a significant number of jobs in the national economy". (Tr. 674–696); *Salas v. Astrue*, Case No. 1:07-CV-00001, Doc. 16 (N.D. Ohio 2007) (Report and Recommendation adopted by Case No. 1:07-CV-00001, Doc. 19).

Following the Court's decision, the Appeals Council remanded the case to the ALJ to hold a second hearing. (Tr. 697–699). Plaintiff appeared with counsel again at this hearing. (Tr. 641). Also appearing was vocational expert (VE) Ted Macy. (Tr. 968). It is primarily the VE's testimony at this hearing in dispute on appeal.

On February 4, 2009, the ALJ issued a partially favorable decision, finding Plaintiff became disabled on August 24, 2008, but not before. (Tr. 636–651). Plaintiff again appealed this decision, and the Appeals Council again denied review, making the ALJ's partial award of benefits the final

decision of the Commissioner. (Tr. 613–615). Thereafter, Plaintiff filed the instant suit challenging the ALJ's determination he was not disabled before he attained the age of 55 on August 24, 2008.

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. § 1382(a)(1). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is

disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The Court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)–(f), 416.920(b)–(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff presents two arguments challenging the ALJ's decision at step five of the disability analysis. First, Plaintiff argues the ALJ's pre-August 24, 2008 step five determination lacks the substantial support of evidence because the ALJ relied on jobs the VE testified included exertional activity the ALJ determined Plaintiff could not perform. Second, Plaintiff argues the ALJ erred by relying in part on sedentary jobs when using the Medical-Vocational Guidelines (the grid) as a

4

framework to determine Plaintiff was not disabled before his 55th birthday. These arguments are addressed in turn.

Pushing and Pulling

The ALJ made the following RFC determination:

I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can lift and carry 20 pounds occasionally and ten pounds frequently; stand/walk four hours in an eight hour workday; sit four hours in an eight hour workday; no push/pull; he can occasionally climb ramps and stairs, but never use ladders, ropes, or scaffolds; he can frequently balance, occasionally stoop and crouch, but never kneel or crawl; he cannot reach overhead with the left arm; but can frequently handle, finger and feel; he must avoid temperature extremes and humidity; and he must work in a relatively clean environment without excessive dust or fumes; he can engage in simple routine tasks, but no work involving the capabilities of arbitration, confrontation or negotiation.

(Tr. 644–645). Plaintiff focuses on the ALJ's limitation of "no push/pull". That is, Plaintiff argues the ALJ found Plaintiff could not push or pull while simultaneously determining Plaintiff could perform jobs that required pushing or pulling. This argument centers on the VE's testimony.

To satisfy the Commissioner's burden at step five on the issue of whether Plaintiff could perform ample other jobs in the economy, the ALJ – citing the VE's testimony – found Plaintiff could still perform the jobs of bench assembler, wire worker, and final assembler. (Tr. 650). These jobs were provided by the VE in response to a hypothetical question which included the limitation of no pushing or pulling. (Tr. 982–983). According to Plaintiff, the VE later altered his testimony and indicated these jobs actually do involve some pushing or pulling. If correct, the ALJ's step five determination would lack substantial support in the record. *See Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990) (noting the need for "expert vocational testimony or other similar evidence" to satisfy the Commissioner's burden at step five).

When Plaintiff's counsel asked the VE, "[a]ll three of these occupations would require some

5

pushing and pulling, wouldn't they?", the VE responded:

> Yeah, you'd be, you'd be pushing and pulling your chair in and out. I don't think you'd be pushing and pulling carts a lot but some of them would require that as well with a, you know, a minimal amount of exertion, and you're not pushing and pulling heavy things certainly. . . . I think reaching is probably better than pushing or pulling. . . . I mean, you're talking 10, 15 pound items, I guess you might have to slide rather than – maybe it's easier to slide than it is to pick it up, probably at one's option.

(Tr. 1013–1014).

Plaintiff, taking the ALJ's words as literally as possible, argues this testimony deprives the conclusion that Plaintiff could perform the three jobs in question of substantial support in the record. The Commissioner, on the other hand, argues that the limitation of no pushing or pulling in the RFC refers to more than the trivial amount of pushing or pulling the VE, at most, described. The Commissioner argues the ALJ really meant no pushing or pulling that constitutes "a major responsibility or characteristic" of a job, and that his RFC actually allows for a de minimus amount of pushing or pulling "like most any job".

When viewed in the context of the whole RFC, the Commissioner's argument prevails. While the ALJ's hypothetical when taken literally would deprive his decision of substantial support, his limitation of "no push, pull" must reasonably be read to mean no pushing or pulling of arm or leg controls or substantial carts or other apparatus requiring physical exertion, because of his RFC's reference to light exertional work and because his hypothetical described light exertional work. A restriction on one's ability to push or pull is considered an exertional limitation by the regulations because it affects the individual's ability to meet the strength demands of a job. 20 C.F.R. § 404.1569a(b). Under the regulatory definition of light exertional work, a person capable of light work must be able to perform substantially all of several activities, one of which is "sitting most of the time with some pushing and pulling or arm or leg controls." 20 C.F.R. § 404.1567(b). By saying

Plaintiff is capable of " light work as defined in 20 CFR 416.967(b) except . . . no push/pull", the ALJ was assigning a modified range of light work that Plaintiff could still perform, impliedly saying no pushing or pulling of arm or leg controls, or otherwise pushing or pulling something substantial. Moreover, in his hypothetical, the ALJ described an individual capable of lifting 20 pounds occasionally and ten pounds frequently – the hallmark characteristic of light work. (Tr. 982); *see* 20 C.F.R. § 1567(b). By saying "no push, pull" in his hypothetical, the ALJ was merely carving out aspects of the regulatory definition of light work that Plaintiff cannot do; he was not, in fact, saying Plaintiff can literally never push or pull anything.

The VE's testimony did not suggest the three jobs in question involve any sort of pushing or pulling of arm or leg controls or any other pushing or pulling requiring physical exertion. At most, the de minimus amount of pushing or pulling the VE discussed was not consistent with any type of exertional limitation otherwise applicable to Plaintiff. Notably, even after discussing the debatable pushing and pulling the jobs of bench assembler, wire worker, and final assembler include, the VE did not recant his testimony that the hypothetical individual who cannot push or pull would still be capable of performing these jobs. This additional testimony does not deprive the determination that Plaintiff is capable of a modified range of light work not involving pushing or pulling of substantial support in the record.

Sedentary Jobs

Plaintiff also argues the ALJ erroneously relied on 700 sedentary jobs in concluding that significant jobs Plaintiff could still perform exist in the economy. This argument centers on the ALJ's use of the grid. The grid is a set of guidelines used by the Commissioner at step five. Where a claimant has only exertional limitations (those limiting his strength), the Commissioner can satisfy

7

his step five burden "without considering direct evidence of the availability of jobs the particular claimant can perform, through reference to the grid". *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). Essentially, the grid allows the Commissioner to take "administrative notice . . . of the existence of jobs in the national economy that those with particular combinations of the four statutory factors are capable of performing." *Id.* Through a set of rules, the grid uses combinations of the four statutory factors – age, education, work experience, and exertional RFC, *see* 42 U.S.C. § 1382c(a)(3)(B) – to direct a finding of disabled or not disabled when a claimant has only exertional limitations. 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).

However, when a claimant suffers from both exertional and non-exertional impairments, or when a claimant is unable to perform substantially all of the exertional demands of work at a given level of exertion, rigid application of the grid is generally inappropriate. *Id*. at 926. Instead, the grid may be employed only as a "framework" to provide guidance, so long as a finding of disabled cannot be made based on the claimant's exertional limitations alone (in which case a finding of disabled is mandated). *Id.*; 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e)(2).

> The grid gives an explanation for its rules on individuals approaching advanced age:
>
> Individuals approaching advanced age (age 50–54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains. However, recently completed education which provides for direct entry into sedentary work will preclude such a finding. For this age group, even a high school education or more (ordinarily completed in the remote past) would have little impact for effecting a vocational adjustment unless relevant work experience reflects use of such education.

20 C.F.R. Part 404, Subpt. P, App. 2 § 201.00(g). As the ALJ correctly noted (Tr. 650), the grid directs a finding of not disabled for a claimant who is approaching advanced age, is capable of

performing the full range of light work, has unskilled work experience, and has a high school education. 20 C.F.R. Part 404, Subpt. P, App. 2 § 202.13. However, if such a claimant is capable of performing only sedentary work, then the grid directs a finding of disabled. 20 C.F.R. Part 404, Subpt. P, App. 2 § 201.12. This was used as a framework by the ALJ because he found Plaintiff is capable of only a limited (not the full) range of light work and has an RFC that includes some non-exertional limitations. (Tr. 650).

    Noting the grid would require a finding of disabled if he were only capable of sedentary work, Plaintiff argues the ALJ erred by relying in part on sedentary jobs to conclude ample work Plaintiff could still perform exists in the economy. That is, the ALJ cited the occupations of bench assembler, wire worker, and final assembler as jobs Plaintiff could still perform, but the VE testified the job of final assembler is sedentary. (Tr. 983). So the legal question is, can an ALJ rely in part on sedentary jobs to determine ample work for a claimant exists when the grid would direct a finding of not disabled if all the claimant could perform were sedentary jobs?

    The Commissioner, without citation to any authority on the situation, argues Plaintiff has misconstrued the concept of an RFC as the minimum amount of work a claimant can still perform. In other words, the Commissioner defends the inclusion of the final assembler jobs on the theory that by definition a claimant who can perform light work can also generally perform sedentary work. *See* 20 C.F.R. § 404.1567(b). But even though Plaintiff would be physically capable of performing final assembler work with the RFC the ALJ determined he has, he argues it cannot be counted as work available given his age, experience, and education because the grid says he would still be disabled regardless of how many final assembler (sedentary) jobs he could still perform exist in the economy. Though the answer comes from reasons other than what the parties argue, the law is on the

Commissioner's side here.

> The Commissioner has promulgated a ruling on how to use the grid in this situation:
>
> If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:
>
> a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>
> b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."
>
> c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [VE] assistance is advisable for these types of cases.

SSR 83-12, 1983 WL 31253, at *2–3. So at the very least, the ALJ must consult a VE in this scenario to ascertain the occupational base, which was properly done here.

Plaintiff points the Court toward *Damron v. Secretary of Health and Human Services*, 778 F.2d 279 (6th Cir. 1985), where the Sixth Circuit confronted a situation similar to this. However, the court disposed of that case in a manner that did not require analysis of this question. The ALJ in *Damron* found the plaintiff not disabled under the grid, but the court ultimately determined the ALJ erred by rigidly and improperly applying the grid without obtaining VE testimony when the plaintiff had non-exertional limitations. *Id.* at 281–282. Nonetheless, Plaintiff hangs his hat on the following dicta by the court:

> Although the ALJ found that Damron has "the residual functional capacity to perform *at least* light work on a sustained basis" (emphasis added), it is clear from the record that if she does not have the RFC to perform light work on a sustained

> basis, she must be found to be totally disabled. The grid would compel this finding under 20 C.F.R. 404 Appendix 2 of Subpart P, Rule 201.09, given her age, education, and lack of work experience.

*Id.* at 282. The rule cited by the court that would direct a finding of disabled – Rule 201.09 – was the corresponding rule for the plaintiff's age, education, and experience at the sedentary level of exertion.

Contrary to Plaintiff's argument, *Damron* does not provide support for the proposition Plaintiff argues. *Damron* stands merely for the proposition that an ALJ must obtain VE testimony when the grid cannot be rigidly applied. *See* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e)(2). Plaintiff seemingly overlooks the fact that the court's language in *Damron* expressly referred to the claimant's RFC, not his occupational base – a difference that is fatal to his argument. In fact, though neither side cites it, the Sixth Circuit rejected the very argument Plaintiff makes in *Anderson v. Commissioner of Soc. Sec.*, 406 F. App'x 32 (6th Cir. 2010), saying it is "premised on a misunderstanding of the regulations":

> [T]he ALJ found that Anderson has the RFC to perform light work with certain modifications. Anderson does not dispute this RFC. Rather, he supposes that if the VE testified as to the existence of jobs that Anderson could perform that a person with a sedentary RFC could also perform, then that testimony would change Anderson's RFC to sedentary and, pursuant to the grid guidelines, dictate a finding of "disabled." *Compare* 20 C.F.R. pt. 404, subpt. P, app. 2, at § 202.10 *with id.* at § 201.09 (whether a claimant with certain characteristics i[s] disabled hinges on whether the claimant has an RFC for light work or for sedentary work).
>
> That is not how the system operates. The RFC is based on the claimant's particular disabilities, an inquiry wholly independent from what jobs are available in the regional and national economy. [I]n a step-five analysis, the VE's testimony depends upon the RFC and not the other way around. . . .
>
> "It is a non sequitur to argue that because plaintiff suffered conditions that limited her job base essentially to sedentary jobs, the ALJ erred in concluding that plaintiff was able to perform a limited range of light work."

11

*Id.* at 35–36 (citations omitted) (quoting *Johnson v. Barnhart*, 2005 WL 3271953, at *14 (W.D. Wisc. 2005).

In this case, Plaintiff conflates his RFC with his occupational base. As the court in *Anderson* pointed out, they are distinct concepts. The grid itself explains its results are based on "analysis of the various vocational factors (i.e., age, education, and work experience) in combination with the individual's *residual functional capacity* (used to determine his or her maximum sustained work capability for sedentary, light, medium, heavy, or very heavy work)". 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00 (emphasis added). That is, application of the grid is *not* based on analysis of the various vocational factors in combination with the claimant's occupational base. *Anderson* clarifies Plaintiff's argument fails because of this difference. Even if the only jobs actually available in the economy for a claimant with a light RFC happen to be sedentary, it does not change the fact the claimant is still capable of performing light work – and the exertional level of work a claimant can still perform at most is what application of the grid depends on, not on whether there are actually jobs available at that exertional level. Accordingly, relying in part on sedentary jobs even though the ALJ determined Plaintiff has a light RFC, and a sedentary RFC would have disabled him under the grid, was not contrary to law and did not deprive the Commissioner's decision of substantial support.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Commissioner's decision denying benefits is supported by substantial evidence. The undersigned therefore recommends the Commissioner's denial be affirmed.

                      s/James R. Knepp, II
                      United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).